BENJAMIN WALKER *vs.* THE INHABITANTS OF SOUTHBRIDGE.

In an action against a town, by one of the inhabitants thereof, to recover for the support of a pauper from April 5th, 1846, to April 5th, 1847, it appeared, that the pauper had been previously kept by the plaintiff, under a contract with the town, which had terminated on the 5th of April, 1846 ; that on the 28th of March, 1846, the overseers of the poor of the town, of whom the plaintiff was one, made an arrangement for the support of the pauper with another person, who, on the said 6th of April, accompanied by two of the overseers appointed a committee for the purpose, went to the plaintiff's house, where the pauper then was, in order to

remove him to his own house; that, in consequence of some negotiation between the plaintiff and such other person, relative to the support of the pauper, bu, which did not terminate in a contract, the pauper was suffered to remain in the plaintiff's house, and was supported there by him; it was held, that in order to entitle the plaintiff to recover, it was necessary that he should have given the notice required by statute (Rev. Sts. *c.* 46, § 18), and that it was not euough that the overseers had reasonable notice, by their having heard that the pauper had not been removed from the plaintiff's, but had remained with and been supported by him.

In this case, which was tried before *Hopkinson*, J., in the court of common pleas, and argued in this court, upon exceptions to the rulings of the judge in the court below, by *W. A. Bryant*, for the defendant, and *N. Wood*, for the plaintiff, the facts are sufficiently stated in the opinion of the court.

FLETCHER, J. This is an action of assumpsit, in which the plaintiff seeks to recover of the defendants a certain amount for the support of William Simpson, a pauper, from April 5th, 1846, to April 5th, 1847.

The plaintiff and his brother David had kept the pauper from some time in 1845 to April, 1846, by contract with the defendants. In April, 1846, the contract between the town and the plaintiff wholly ceased. For a year subsequent to April, 1846, the overseers of the poor of the town of Southbridge made an arrangement with one Jackson for the support of the pauper. This arrangement with Jackson was made by a bidding at auction, a mode of proceeding for providing for the poor very common, and extensively practised in this commonwealth; but whether a humane and commendable mode of proceeding or not, is not material to the decision of this case. The plaintiff was one of the overseers, and of course a party to the arrangement with Jackson, for the support of the poor person in question.

On the 6th of April, the day after the contract with the plaintiff was terminated, two of the overseers with Jackson went to the house of the plaintiff, for the purpose of delivering the pauper to Jackson, who went with a carriage to take him away. After an appraisal by the overseers of the apparel of the pauper, for the purpose of transferring him to Jackso'1,

the two overseers went away, leaving Jackson there; and some attempts were then made, by the plaintiff and his brother David, to negotiate with Jackson in regard to their keeping the pauper, who was the uncle of the wife of David Walker. In fact, however, no bargain was concluded, though in consequence of the negotiation, the pauper was not taken away by Jackson, but continued with the plaintiff, who now claims payment for his support.

Two of the overseers testified, that, soon after the 6th of April, they heard that the pauper remained with the plaintiff, but supposed it was by arrangement between Jackson and the plaintiff; and that they had no knowledge that the plaintiff claimed pay for his support until the end of six months, when he demanded an order for two quarters' pay.

At the trial, it was objected by the defendants, that the plaintiff had given no notice as required by the statute, and could not therefore maintain this action. Upon this point, the judge, who presided at the trial, instructed the jury, that the plaintiff need not give any formal notice to the overseers, who were bound to inquire, if they heard that Simpson had not been removed, and that if the overseers were reasonably so notified, the town would be liable. To this instruction, exception was taken.

Upon this instruction, the jury were left to find, that as the overseers, shortly after the time when Jackson took measures to remove the pauper, heard that he had not been removed, that was reasonable notice; though the overseers testified, that they supposed he remained with the plaintiff, in pursuance of some arrangement between the plaintiff and Jackson. It is manifest, from the facts in the case, that if they had not so supposed, they would have seen to his removal. The contract between the plaintiff and the town having entirely ceased to have any effect, the plaintiff, to maintain his action, must bring himself within the provisions of the statute.

The liability of the town is one imposed wholly by statute, and the right of the plaintiff to recover depends equally upon

the statute; and the plaintiff, to make out his case, must show a compliance with the statute provision. By the Rev. Sts. *c.* 46, § 18, it is enacted, that every town shall be held to pay any expense, which shall be necessarily incurred, for the relief of a pauper, by any person who is not liable by law for his support, after notice and request made to the overseers of said town, and until provision shall be made by them.

By this provision, the town is rendered liable for the support of a poor person only after notice and request; not only notice but request, importing a distinct call on the town. The fact that the plaintiff was an overseer is immaterial as to the question of notice, since he cannot act both in his private and official capacity, so as to represent both parties at the same time.

This provision for notice to the town is of great importance, deeply affecting the interests of towns, and is one to which every person claiming upon the town should be required to give full and complete effect. The terms used in the statute, *notice* and *request*, clearly import that a party, to hold a town responsible for support furnished to any person, should be required to give express and formal and particular notice to, and make a distinct request of, the town.

It would alarmingly enhance the burdens and responsibilities of towns, if they were to be held liable to any person who might furnish aid to any one in need, without any other notice than some accidental information, or floating report, which might happen to reach the overseers, and without any request.

The statute surely does not require the overseers to make inquiry, or to go in pursuit of any reports which may casually reach them. But, on the contrary, it requires that the town shall have notice and request; which clearly must mean formal and express notice and request. The impropriety of holding a town responsible upon any other than formal and direct notice and request, is strikingly illustrated by this very case. The only evidence of notice in this case was, that the overseers had heard that the pauper remained with the

plaintiff shortly after the time for his removal. But the over-seers testified, that they supposed the pauper remained with the plaintiff by some arrangement between him and Jackson, and had no idea that the plaintiff would make a claim on the town for his support. The facts surely well warranted them in this conclusion. They had gone to the plaintiff's house with Jackson for the express purpose of his removal, and left Jackson there in negotiation with the plaintiff. Surely it cannot be, that this is such notice as was intended by the statute, or as the essential interests and safety of the town require.

Yet, upon this evidence, and this alone, under the instruction of the court, the jury found a verdict against the town. In truth, there was nothing which could be called notice, much less request, on the part of the plaintiff. The overseers were evidently entirely misled. The instruction to the jury, under the circumstances of this case, that the plaintiff need not give any formal notice to the overseers, who were bound to inquire, if they heard Simpson was not removed, was erroneous, and, for that cause, a new trial must be granted.

*Exceptions sustained, verdict set aside, and a new trial ordered in the court of common pleas.*